# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COREY LEE DOVE | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-18-1847 |
| WARDEN LAURA ARMSTEAD | * | |
| Defendant | * | |

***

## MEMORANDUM OPINION

Following this court's June 5, 2019 Memorandum Opinion and Order (ECF Nos. 13 and 14) granting in part and denying in part Defendants' motion to dismiss or for summary judgment, the sole remaining Defendant, Warden Laura Armstead, seeks summary judgment in her favor on the remaining claim raised by Plaintiff Corey Lee Dove. ECF No. 15 (Motion); ECF No. 17 (Memorandum in Support). Mr. Dove opposes the motion (ECF No. 18) and seeks an order compelling discovery (ECF No. 19), which is construed as a motion pursuant to Fed. R. Civ. P. 56(d).[1] No hearing is required to resolve the matters pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow Defendant's motion shall be denied and Plaintiff will be provided an opportunity to file a motion to appoint counsel.

## Background

The sole claim remaining to be resolved is Mr. Dove's allegation that he was transferred from Patuxent Institution ("Patuxent") in retaliation for filing administrative complaints ("ARP") regarding the provision of Native American religious services. Although the complaint named as

---

[1] Although Mr. Dove's motion is titled as a motion to compel citing Fed. R. Civ. P. 37(a) and seeks to compel Warden Armstead to answer interrogatories, discovery has not commenced in this case. *See* Local Rule 104.4 (D. Md. 2018) (No discovery until a scheduling order has been issued). Because his motion was filed on the same date as his opposition, the motion will be considered in the context of a motion for summary judgment pursuant to Rule 56(d).

Defendants Warden Laura Armstead, Assistant Warden Allen Gang, and Property Officer Jason Anderson, Mr. Dove's claim of retaliation was levelled only at Warden Armstead. This court observed:

> Mr. Dove's claim that his transfer to JCI was retaliatory is a claim leveled solely at Warden Armstead. ECF No. 4. Because Defendants have not addressed the claim, review of the claim is limited to this court's screening authority under 28 U.S.C. §§ 1915A, 1915(e). A complaint may be dismissed pursuant to 28 U.S.C. § 1915A(b) if it is "frivolous, malicious or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." Under the provisions of 28 U.S.C. § 1915(e)(2) a case must be dismissed at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.
>
> Here, Mr. Dove claims his transfer to Jessup Correctional Institution (JCI) from Patuxent was in retaliation for filing complaints about conduct that interfered with Native American religious services and specifically alleges that Warden Armstead had a meeting regarding Native American services and "told everyone to stop everything about [the] service." ECF No. 4 at p. 4. Shortly thereafter, Mr. Dove and Mr. Sykes were transferred to JCI. The claim is not frivolous and does not fail to state a claim upon which relief may be granted. There is an allegation of protected activity: filing of ARP complaints, *see Booker*, 855 F.3d at 545, followed closely in time by an adverse action against Mr. Dove which he claims had a causal relationship to his protected activity, *see Constantine*, 411 F.3d at 499. Defendant Warden Armstead will therefore be required to respond to the claim of retaliation.

ECF No. 13 at 15 (Memorandum Opinion).

In support of her motion to dismiss or for summary judgment, Warden Armstead provides a declaration explaining that Mr. Dove was transferred to Patuxent from Maryland Correctional Institution Hagerstown ("MCIH") in October of 2017, because a portion of MCIH was closed, necessitating the transfer of 50-60 inmates. ECF No. 15-1 at 1, ¶3. Mr. Dove and other inmates from MCIH were sent to Patuxent because bed space was available there. *Id*. Warden Armstead further states that Patuxent houses "program specific inmates as well as parole violators" but Mr. Dove and the other MCIH transferees were not sent there for either a program or because they were parole violators. *Id*. at 1-2, ¶4. In order to accommodate inmates who required programming

at Patuxent, or who had violated parole, Mr. Dove and the other MCIH inmates were later transferred to other prisons as bed space was needed at Patuxent. *Id*. at ¶5. Pursuant to those needs and concerns, Mr. Dove was transferred on May 25, 2018. *Id*. Although Warden Armstead states that she relies on case management staff to determine the appropriate institutional assignment for inmates, there is no explanation regarding what that reliance entails. *Id*. at ¶6, *see also* ECF No. 15-2 (Declaration of Douglas Dill, Case Management Manager).

In his opposition, Mr. Dove insists that there was a meeting during which Warden Armstead instructed others to stop all Native American services and that she would handle the situation. ECF No 18 at 2. He claims the way she handled it was by transferring all of the participants in the Native American services out of Patuxent on the same day of the meeting. *Id*. at 3. He alleges that the meeting included Chaplain Ingram, the Chief of Security, and Sgt. Jason Anderson. *Id*. at 2. Mr. Dove acknowledges that he "was told about the meeting" but does not state who informed him of the meeting and relies on the timing of his transfer to establish the retaliatory nature of the transfer. *Id*. at 4; *see also* 6-7 (Declaration). Importantly, Mr. Dove does not include a description of how the transfer adversely impacted his rights or quelled his ability to utilize the administrative remedy process to seek redress for complaints related to his confinement.

**Legal Standards**

Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

3

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries*, *Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the

non-movant typically must file an affidavit or declaration pursuant to Rule 56(d)[2] (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving

---

[2] Rule 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

(1)  Defer considering the motion or deny it;
(2)  Allow time to obtain affidavits or declarations or to take discovery; or
(3)  Issue any other appropriate order.

5

party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Retaliation

The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

A plaintiff can establish this element of retaliatory conduct if the defendant took an action that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

Plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.* In the prison context, Plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir.1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532. After the plaintiff makes a *prima facie* showing, the burden shifts to the defendant to demonstrate that they would have reached the same decision even in the absence of the plaintiff's constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287.

**Analysis**

Mr. Dove does not dispute that his transfer may have been due to the "bed space thing" and acknowledges that that explanation "could make sense" but denies it was the real reason behind his transfer. ECF No. 18 at 4. The disputed fact at issue is whether there was a meeting held where Warden Armstead made a statement about ceasing accommodations for Native American services on the day of Mr. Dove's transfer and Mr. Dove seeks to engage in discovery regarding that fact. ECF No. 19. Specifically, Mr. Dove seeks to compel Warden Armstead to provide a list of inmates transferred from Patuxent on May 25, 2018, presumably to establish that all inmates participating in Native American services were transferred that day obviating any need to continue to provide religious services for those inmates. ECF No. 19 at 1. He also seeks to obtain a statement from Chaplain Ingram that the meeting occurred, and that Warden Armstead made the statement alleged. *Id*. A disputed fact must be material to the claim asserted to warrant discovery in the context of a pending summary judgment motion. Here the evidence sought,

7

together with the absence of evidence supporting Warden Armstead's denial, would tend to show a retaliatory animus, foreclosing Defendant's entitlement to summary judgment.

The alleged meeting took place in close proximity to the retaliatory conduct; the meeting and the transfer took place on the same day. The dates Mr. Dove filed ARPs and Warden Armstead's responses are also in close proximity to the date of his transfer. On April 26, 2018, he filed ARP PATX0250-18 complaining that he was denied a package containing religious materials, which was dismissed by Warden Armstead on May 18, 2018. ECF No. 10-2 at 22; 28-29. On May 13, 2018, Mr. Dove filed ARP PATX0298-18 regarding the cancellation of Native American services, which Warden Armstead dismissed on June 13, 2018. ECF No. 10-2 at 37-39. Mr. Dove was transferred on May 25, 2018, shortly after Warden Armstead denied his April 26, 2018 ARP and before her response was required for the May 13, 2018 ARP. If Warden Armstead issued a directive to stop all efforts to provide Native American Services, it is additional evidence that the transfer was retaliatory.

While Warden Armstead has provided a seemingly legitimate rationale for Mr. Dove's transfer, she does not explain the decision-making process for determining which inmates would be transferred and when, nor does she deny that all Native American participants were transferred on the same day. Her cursory claim that she relies on Case Management staff to determine where to transfer inmates leaves unanswered important questions such as: whether all the Native American participants were transferred on the same day and, if so, why; how many beds were needed for inmates coming into Patuxent on the day of Mr. Dove's transfer; and how many of the MCIH inmates transferred into Patuxent remained there after Mr. Dove was transferred to Jessup Correctional Institution. Further, if Warden Armstead did not make the decision regarding who should be transferred and when, it is unclear who made that decision and what, if any, role Warden Armstead played in approving the transfers. Also left unanswered is whether the transfer of the

8

MCIH Native American group ended all efforts to accommodate the religious practice at Patuxent. Assuming Mr. Dove's requested discovery establishes that Warden Armstead told her staff to cease all efforts to provide religious services to Mr. Dove and other Native American service participants, the transfer of those participants the same day is, as Mr. Dove observes, suspicious. Thus, there is a genuine dispute of material fact foreclosing summary judgment in Warden Armstead's favor.

Warden Armstead also raises a defense of qualified immunity. This too is unavailing. Mr. Dove's right to avail himself of the administrative remedy procedure without retaliatory action being taken against him was clearly established as of May 25, 2018, the date of his transfer. *See Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017) (inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment).

**Conclusion**

For the reasons stated, Defendant's motion to dismiss or for summary judgment, construed as a motion for summary judgment, will be denied. Plaintiff's motion to compel, construed as a motion filed pursuant to Fed. R. Civ. P. 56(d), is granted to the extent he seeks to commence discovery; however, discovery will not commence immediately as Plaintiff will be provided a brief period of time to move for appointment of counsel.

A separate Order follows.


November 4, 2019  _____/s/_____
DEBORAH K. CHASANOW
United States District Judge